IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN H. MITCHELL, | ) |
| Plaintiff, | ) Civil Action No. 15-568 |
| | ) |
| v. | ) District Judge Mark R. Hornak |
| | ) Magistrate Judge Lisa Pupo Lenihan |
| Brackenridge Borough SGT. JOHN ANTAL, | ) |
| | ) ECF No. 15 |
| UNKNOWN POLICE OFFICERS from The Brackenridge Borough Police Department, and | ) |
| UNKNOWN POLICE OFFICERS from The Harrison Township Police Department, | ) |
| Defendants. | ) |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss filed by Defendants Sgt. John Antal and Unknown Police Officers from the Brackenridge Borough Police Department (ECF No. 15) be denied in full. It is further recommended that Defendants' Motion for a More Definite Statement, in the alternative, also be denied.

## II. REPORT

Plaintiff brings this civil rights action against a number of police officers for alleged violations of the his civil rights pursuant to 42 U.S.C. § 1983. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331. Venue is proper in this District

under 28 U.S.C. § 1391 (b)(1)-(2), as all of the incidents giving rise to this lawsuit occurred in this District and all parties reside in this District.

   A. **Factual Background**

Plaintiff John H. Mitchell is over the age of 50 and has been disabled since 2008 with two ruptured discs in his lower back. Compl. ¶¶ 13, 15, ECF No. 3. He also has had severe arteriosclerosis since 2010, requiring eleven surgeries and leaving him with nerve damage. *Id.* at ¶¶ 16-17. These conditions cause Plaintiff continuous pain and he routinely uses a walking stick and attends counseling for depression associated with his condition. *Id.* at ¶¶ 19-21.

Plaintiff alleges that on May 10, 2013, he was in extreme pain, prompting him to call Family Services, around 5:00 pm, to speak with a counselor regarding depression. *Id.* at ¶¶ 24-25. That office was closed, however, and provided a phone number for a crisis hotline. *Id.* at ¶¶ 26-27. Plaintiff called the crisis hotline number provided and spoke to a representative, "Joe," about his depression, but stated that he was not suicidal. *Id.* at ¶¶ 27-28. Plaintiff ended the call, but the hotline representative kept calling him back. *Id.* at ¶ 29. Plaintiff asked Joe not to call him back and told him he was fine. *Id.* at ¶ 30.

Plaintiff's wife, Maureen, then answered the phone and talked to Joe, and provided their address. *Id.* at ¶¶ 31-32. Joe told Maureen that her husband was "going to kill himself." *Id.* at ¶33. Joe told Maureen that he had called the police and she informed him that Plaintiff owned three guns, but they were in the bedroom and ended the call. *Id.* at ¶¶ 34-36, 41.

While Maureen was talking to Joe, Plaintiff was walking in his backyard, using his walking stick. *Id.* at ¶¶ 37, 39. He was not armed and there was no weapon in his vicinity. *Id.* at ¶¶ 38, 40. Maureen went outside to the backyard and took him by the arm, supporting him. *Id.* at

¶ 42. They walked approximately twenty yards, up to the garage at the end of the property. *Id*. at ¶ 43. Plaintiff's eldest daughter, fifteen-year-old Emilie Mitchell, followed. *Id*. at ¶ 44.

Plaintiff heard a noise and turned and discovered a police officer approaching him with a shotgun, sneaking from a nearby alley. *Id*. at ¶ 46. Plaintiff asked him, "Are you going to shoot me?" but the officer did not respond. *Id*. at ¶¶ 47-48. Then approximately eight officers approached Plaintiff, his wife, and daughter, from multiple directions, with assault weapons. *Id*. at ¶ 49. The officers began yelling all at once at Plaintiff to "get down" and "put it down." *Id*. at ¶ 50. Maureen had her arm around Plaintiff to support him. *Id*. at ¶ 51. She has two artificial hips and an artificial left knee with a right knee replacement needed in the future. *Id*. at ¶ 52. The officers continued to point their guns at Plaintiff and Maureen and yelled "get away mam." *Id*. at ¶¶ 53-54.

At least two more officers approached around the corner of the garage at this point, armed with assault rifles, and four additional police officers came from behind a neighbor's garage, also with assault rifles. *Id*. at ¶¶ 55-56. The officers yelled, "Put it down. Get down on the ground." *Id*. at ¶ 57. Plaintiff was holding his walking stick and could not physically get onto the ground, telling officers that "I can't drop it" and "I can't get on the ground," repeating this approximately 15 times. *Id*. at ¶¶ 58-60. Maureen also told the officers this, while continuing to hold Plaintiff up. *Id*. at ¶¶ 61-62. This went on for approximately two minutes, and the police became angrier. *Id*. at ¶¶ 63-64. One officer then drew an extending baton and aggressively approached Plaintiff and his wife. *Id.* at ¶ 65. Peacefully, Plaintiff offered his cane to the officer, but another officer quickly pulled Maureen off of Plaintiff, causing him to lose his balance and shift forward. *Id*. at ¶¶ 66-68. Plaintiff put his weight back onto the walking stick and was instantly shot in the chest with a taser gun, without any warning. *Id*. at ¶¶ 69-70. Because of this,

3

he lost control of his body and fell to the right, striking a saw horse and hitting his head on a steel door and steps. *Id*. at ¶¶ 71-72. At the time, Plaintiff was taking a blood thinner and the shot and fall resulted in injuries, including extreme pain and bleeding. *Id*. at ¶¶ 73-74. He shook and convulsed in front of his wife and daughter. *Id*. at ¶ 77.

The officers then stated that they needed the guns. *Id*. at ¶ 78. Maureen went into the house, followed by a large number of officers. *Id*. at ¶ 79. She asked the police to stay outside but they followed her into the house. *Id*. at ¶ 80. The police aggressively searched the various rooms and seized a shotgun, a .22 caliber rifle, and a 177 caliber pellet gun. *Id*. at ¶¶ 81-82. Brackenridge Borough Sergeant John Antal "took charge." *Id*. at ¶ 84. He told Maureen that he was going to keep the guns for a month or two, and then would return them. *Id*. at ¶ 85.

While Maureen was assisting the officers in locating the guns inside the house, Plaintiff was handcuffed, picked up off the ground, dragged and placed in a police car, and transported to a hospital, where he was involuntarily committed until May 14, 2013. *Id*. at ¶¶ 87-91. Other than speaking with Sgt. Antal and witnessing patrol cars and uniforms from the Brackenridge Borough Police Department and the Harrison Township Police Department, Plaintiff was never in a position to discover the individual identities of the officers who participated in his arrest. *Id*. at ¶ 99.

Sometime after Plaintiff was released from the hospital, Sgt. Antal called Plaintiff's home to talk with his wife, but Plaintiff answered. *Id*. at ¶ 93. Sgt. Antal told Plaintiff that he thought his arrest was handled "appropriately." *Id*. at ¶ 94. He told Plaintiff that he had been dispatched to Plaintiff's home because of a weapon. *Id*. at ¶ 95. Sgt. Antal said Plaintiff was shot because he would not "show his hands." *Id*. Plaintiff was never charged with a crime, but suffered physical,

emotional, and financial injuries from Defendants' alleged use of excessive force and involuntary commitment. *Id*. at ¶¶ 98, 100, 111, 113.

Subsequently, Plaintiff filed the instant civil rights action claiming that the Defendants violated his Fourth Amendment rights when they unreasonably seized him and used excessive force on him in effectuating the seizure. Plaintiff further alleges that Defendants lacked probable cause to seize and involuntarily commit him in violation of the Fourth Amendment. For relief, Plaintiff seeks compensatory, as well as punitive, damages. In response, Defendants Sgt. Antal and Unknown Police Officers from the Brackenridge Borough Police Department (the "Brackenridge Officers") (collectively, the "Brackenridge Defendants"), filed a motion to dismiss the Complaint (ECF No. 15). That motion has been briefed (ECF No. 16) and Plaintiff has filed a response in opposition (ECF No. 19). Thus, the motion is ripe for disposition.

### B. Standard of Review

In deciding a motion to dismiss under Rule 12(b)(6), the courts apply the following standard, as recently reiterated by the court of appeals[1]:

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." But detailed pleading is not generally required. The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

---

[1] The court notes that the standard cited by Plaintiff, dismissal is proper only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief," is no longer the standard and has been replaced by the one cited herein. Pl's Resp. in Opp'n to Defs.' Mot. to Dismiss at 1, ECF No. 19.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n. 27 (3d Cir.2010). Although the plausibility standard "does not impose a probability requirement," *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." Id. (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679, 129 S.Ct. 1937.

*Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 786-87 (3d Cir. 2016). Building upon the landmark Supreme Court decisions in *Twombly* and *Iqbal*, the court of appeals in *Connelly* reiterated the three-step process district courts must undertake to determine the sufficiency of a complaint:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679, 129 S.Ct. 1937. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir.2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

*Id.* at 787. *See also Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011) ("This means that [the court's] inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.").

The third step of this evaluation requires the court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). "Although a plaintiff may use legal conclusions to provide the structure for the complaint, the pleading's factual content must independently 'permit the court to infer more than the mere possibility of misconduct.'" *Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x 774, 776 (3d Cir. 2009) (quoting *Iqbal*, 129 S.Ct. at 1950) (other citation omitted).

At the motion to dismiss stage, "for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss[,]" but need only allege "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Connelly*, 809 F.3d at 788-89 (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556)) (footnote omitted).

### C. Discussion

The Brackenridge Defendants have moved to dismiss Plaintiff's claims of unreasonable seizure due to excessive force (Count I) and involuntary commitment without probable cause (Count II), as well as Plaintiff's request for punitive damages. In the alternative, the Brackenridge Defendants argue that they are entitled to a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). The Court will address each of these arguments in turn.

1. Statute of Limitations.

Initially, the Brackenridge Defendants argue that Plaintiff's Section 1983 claims are barred by the statute of limitations imposed on tort claims under Pennsylvania law. Defs.' Br. in Supp. of Mot. to Dismiss at 5, ECF No. 16 ("Defs.' Br."). They maintain that the incident giving rise to Plaintiff's claims occurred on May 10, 2013, and that Plaintiff filed a motion for leave to

7

proceed in forma pauperis, without prepaying fees or costs, on April 30, 2015, which they admit was within the two-year time period required under the statute of limitations. *Id.* However, this motion was not granted and the Complaint was not filed until May 20, 2015, which the Brackenridge Defendants argue does not fall within the two-year statute of limitations under Pennsylvania law, thus making the claims time barred. *Id*.

In his Response, Plaintiff argues in opposition that he filed his Complaint timely within two years and any delay caused by his in forma pauperis motion does not make the docketing of his Complaint untimely. Pl's Resp.in Opp'n to Defs.' Mot. to Dismiss at 3, ECF No. 19 ("Pl.'s Resp.").

A statute of limitations defense can be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Benard v. Wash. Cty.*, 465 F. Supp. 2d 461, 467 (W.D. Pa. 2006) (quoting *Robinson v. Johnson,* 313 F.3d 128, 135 (3d Cir. 2002)). Claims under Section 1983 are constitutional tort claims, so they have the same statute of limitations imposed on state personal injury actions. *Owens v. Okure,* 488 U.S. 235, 249-50 (1989); *Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003). The statute of limitations for tort claims in Pennsylvania is two years. 42 Pa. Stat. and Cons. Stat. Ann. § 5524(7); *Garvin,* 354 F.3d at 220 (citing § 5524(7)).

However, for purposes of the statute of limitations, a complaint will be deemed "constructively filed on the date the clerk received it, as long as the District Court ultimately granted the motion to proceed in forma pauperis or the plaintiff paid the filing fee." *Hughes v. Smith*, 237 F. App'x 756, 759 (3d Cir. 2007) (citing *McDowell v. Del. State Police*, 88 F.3d 188, 191 (3d. Cir. 1996)).

Plaintiff filed a motion for leave to proceed in forma pauperis on April 30, 2015, which the Court granted on May 20, 2015. (ECF No. 2). Because the motion was ultimately granted, Plaintiff's Complaint is deemed filed on April 30, 2015, which Defendants admit was within the two-year period imposed by the statute of limitations, as the events giving rise to the claims occurred on May 10, 2013. Defs' Br. 5.

Accordingly, the Brackenridge Defendants' motion to dismiss, based on the argument that the Section 1983 claims are barred by the statute of limitations, should be denied.

2. Whether Complaint Alleges Sufficient Facts to State a Plausible Fourth Amendment Violation – Excessive Force

In order to "state a claim of liability under §1983, [a plaintiff] must allege that [he] was deprived of a federal constitutional or statutory right by a state actor." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (citation omitted). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Therefore, to state a claim for relief under §1983, a plaintiff must demonstrate both that the defendants were acting under color of state law and that a constitutional violation was directly caused by their conduct. *Piecknick v. Pa.*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

9

The use of excessive force by law enforcement officials in making an arrest may give rise to a claim under 42 U.S.C. § 1983 for a violation of the Fourth Amendment. "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." *Abraham v. Raso,* 183 F.3d 279, 288 (3d Cir. 1999) (citing *Brower v. Cty. of Inyo,* 489 U.S. 593, 599 (1989)).

The Brackenridge Defendants argue that Plaintiff's Complaint fails to allege sufficient facts to show that they personally participated in the purported use of excessive force against Plaintiff or the involuntary commitment. Defs.' Br. 5-6. They maintain that in the absence of allegations of direct personal involvement in the use of excessive force or taking Plaintiff into custody, Plaintiff cannot sustain a claim against them for a violation of his Fourth Amendment rights. *Id.* at 6.

For purposes of the Motion to Dismiss, the Brackenridge Defendants concede that shooting Plaintiff with a taser, handcuffing him, and dragging him to a patrol car, after being informed numerous times that he was disabled and could not stand upright or walk without a cane, could rise to the level of an unreasonable seizure. *Id.* at 6. However, the Brackenridge Defendants submit that the Complaint does not indicate that either Sgt. Antal or the Brackenridge Officers engaged in any of this conduct. *Id.* at 6.

Precedent makes clear that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (citing *Parratt v. Taylor,* 451 U.S. 527, 537 n.3 (1981) (other citation omitted)); *see also C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir.2005) ("To impose liability on the individual defendants, Plaintiffs must show that each one individually participated in the alleged constitutional violation

or approved of it.") (citing *C.H. v. Oliva,* 226 F.3d 198, 201–02 (3d Cir. 2000) (en banc)). A plaintiff must aver this personal involvement through allegations of participation, personal direction, or actual knowledge and acquiescence. *Rode,* 845 F.2d at 1207. These allegations "must be made with appropriate particularity." *Id. See also Iqbal,* 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Santiago v. Warminster Twp.*, 629 F. 3d 121, 130 (3d Cir. 2010) ("Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to 'demonstrate a 'plausible nexus' or 'affirmative link' between the [directions] and the specific deprivation of constitutional rights at issue.'") (quoting *Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000)).

In response to the argument that he has failed to allege any personal involvement by the Brackenridge Defendants, Plaintiff submits that he was peacefully walking on his property with his wife and his daughter, standing with the aid of his cane and his wife's arm. Pl's Resp. 3. He maintains that police stormed his property, guns drawn, because Plaintiff made a call to a counseling hotline for help with his depression. *Id.* Plaintiff submits that he did not resist arrest and made no threats or gestures towards anyone. *Id.* Additionally, Plaintiff insists that he and his wife tried to explain to the officers that, due to his medical conditions, he could not drop his cane or get onto the ground. *Id.* He maintains, however, that the Defendants threatened him and then shot him with a taser. *Id.* Plaintiff contends that, because of this, he fell violently to the ground, striking his head, resulting in injuries, and causing him to convulse in front of his family. *Id.* He was then handcuffed, dragged to the police car, and transported to confinement. *Id.* In addition, Plaintiff points to the allegations in paragraphs 5 and 9 of his Complaint:

> 5. It is alleged that Antal was the person in charge of the police action described here and encouraged, approved of, and/or personally used excessive force upon Plaintiff and encouraged, approved of and/or seized Plaintiff for an involuntary commitment.
>
> . . .
>
> 9. It is alleged that said officers encouraged, approved of, or used excessive force upon Plaintiff and encouraged, approved of or unreasonably seized Plaintiff for an involuntary commitment.

Compl. ¶¶ 5, 9. Plaintiff submits that based on the above allegations, he has sufficiently pled his excessive force and involuntary confinement claims.

The Court finds that the Complaint has set forth a plausible Fourth Amendment excessive force claim under *Twombly* and *Iqbal*. It is clear from the Complaint that Plaintiff observed, *inter alia,* approximately fourteen police officers from Brackenridge Borough and Harrison Township approaching him with assault rifles drawn, and was then tased, handcuffed and dragged to the patrol car, and then driven to the hospital. Other than speaking with Sgt. Antal and witnessing patrol cars and uniforms from the Brackenridge Borough and Harrison Township Police Departments, Plaintiff alleges he was never in a position to discover the individual identities of the officers who participated in his arrest. Compl., ¶99. At this stage of the litigation, these allegations are sufficient to raise a reasonable expectation that discovery will reveal that Brackenridge police officers were personally involved in some or all of the alleged conduct.

With regard to Sgt. Antal, the Brackenridge Defendants made a number of unfavorable assumptions to which they are not entitled in a motion to dismiss. To wit, Defendants argue that Sgt. Antal could not have been the one who tased Plaintiff, handcuffed him, and dragged him to the police car and drove him to the hospital, because, if it was, Plaintiff would have identified Sgt. Antal since Plaintiff knew who Sgt. Antal was. Defendants' argument raises a factual issue

which cannot be resolved in a motion to dismiss, and ignores the fact that Plaintiff is proceeding against Sgt. Antal under a theory of supervisory liability, *see* Compl., ¶¶ 5, 12, 84. Moreover, Sgt. Antal was specifically identified as being present at the scene, most likely due to his encounter with Plaintiff's wife in the house and his seizing the guns, and he allegedly was the police officer who "took charge." Contrary to Defendants' argument, the Court cannot reasonably infer from the Complaint that Sgt. Antal was not present during some or all of the events that occurred in the backyard, prior to the guns being seized. Rather, the more reasonable inference to be drawn from the allegations in the Complaint is that the police officers were acting pursuant to Sgt. Antal's orders. Therefore, the Court concludes that the facts alleged raise a reasonable expectation that discovery will reveal evidence that Sgt. Antal was personally involved in the alleged conduct either through actual personal involvement or in a supervisory capacity. This is sufficient to survive a motion to dismiss.

Accordingly, the Court recommends that the Brackenridge Defendants' Motion to Dismiss Plaintiff's Fourth Amendment claim based on excessive force and unnecessary seizure be denied.

### 3. Whether Plaintiff's Excessive Force Claim for Involuntary Commitment Fails Due to Probable Cause

The Brackenridge Defendants submit that probable cause existed for the involuntary commitment. Defs.' Br. 7. In support, the Brackenridge Defendants point out that Plaintiff contacted a representative at a crisis hotline, who then contacted Plaintiff's wife and advised her that Plaintiff threatened to kill himself and that the representative had called the police. *Id.* The Brackenridge Defendants maintain that, with this information, they had sufficient probable cause to transport Plaintiff to the hospital, where he was involuntarily committed. *Id.*

Plaintiff counters that Defendants did not charge Plaintiff with any crime, nor should they have. Pl.'s Resp. 4. He further maintains that there was no probable cause to shoot him with a taser. *Id*. Plaintiff advances the argument that the Brackenridge Defendants had no reasonable suspicion[2] that Plaintiff was a danger to himself or others when they used potentially deadly force on him. *Id.* Plaintiff submits that there was no probable cause to arrest him, or to hold him in involuntary confinement. *Id.* Also, he maintains that Brackenridge Defendants should not be permitted to allege a qualified immunity defense because reasonable police officers would not have acted in this manner. *Id.*

Under Pennsylvania law, 50 Pa. Stat. and Cons. Stat. Ann. § 7301(a), a person may be subject to an emergency examination and involuntarily committed if he is "severely mentally disabled and in need of immediate treatment." A person meets this description when, because of the mental illness, his ability to "exercise self-control, judgment, and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself." *Id.* A clear and present danger to oneself will be shown to exist where within the past 30 days: (1) there is evidence that the individual cannot provide for his basic needs, such as nourishment, without supervision and that this could lead to death or serious injury; (2) he has attempted suicide or made threats to commit suicide and has committed acts in furtherance of this threat; or (3) he has substantially mutilated himself or has attempted to do so. *Id.* at (b)(2)(i-iii).[3] *See In re Hutchinson,* 454 A.2d 1008, 1010 (Pa. 1982) ("It is well-settled that involuntary civil commitment of mentally ill persons

---

[2] In Plaintiff's Response in Opposition to Defendant's Motion to Dismiss, the word "suspension" is used, but the Court believes that Plaintiff meant "suspicion."

[3] The Brackenridge Defendants' argument focuses on whether Plaintiff was a clear and present danger to himself. Therefore, the Court need not consider for purposes of the Motion to Dismiss whether Plaintiff posed a clear and present danger to others under 50 Pa. Stat. and Cons. Stat. Ann. § 7301(b)(1).

constitutes deprivation of liberty and may be accomplished only in accordance with due process protections.").

Furthermore, if the individual falls into any of these three categories, 50 Pa. Stat. and Cons. Stat. Ann. § 7302 imposes the requirements for an emergency examination. Before such an examination can take place, either: (1) a physician must certify that the examination is needed; (2) a warrant must be issued, authorizing the examination, by the county administrator; or (3) without a warrant "upon application by a physician or other authorized person who has personally observed conduct showing the need for such examination." 50 Pa. Stat. and Cons. Stat. Ann. § 7302(a). The third option, an emergency examination without a warrant, requires "personal observation of the conduct of a person constituting reasonable grounds" to believe that the person is in need of immediate treatment, by a physician or peace officer, before the mentally-ill person can be taken to a facility for an emergency examination. *Id.* at (a)(2).

In the present case, Plaintiff alleges sufficient facts to show that it is plausible that the Brackenridge Defendants lacked probable cause to seize and involuntarily commit Plaintiff under 50 Pa. Stat. and Cons. Stat. Ann. § 7301(a). To meet the probable cause threshold required to administer an emergency examination without a warrant, the Brackenridge Defendants must have personally observed Plaintiff's conduct and his conduct must have fallen into one of the three categories outlined in 50 Pa. Stat. and Cons. Stat. Ann. § 7301(b)(2). The facts alleged in the Complaint do not suggest that Plaintiff was unable to provide for his basic needs, that he had attempted suicide or made threats to do so *and* committed acts in furtherance of the threat, or that he had mutilated himself or attempted to do so. Plaintiff alleges that he was not suicidal and informed the crisis hotline representative of same. Plaintiff further alleges Sgt. Antal told Plaintiff that he was dispatched to Plaintiff's home due to a weapon. Compl. ¶ 95. Furthermore,

he was in the backyard when the police approached him and none of his guns were in his immediate possession or in the vicinity; they were all located in a bedroom in the house, which Plaintiff's wife had also communicated to the crisis hotline representative. Indeed, it is alleged that when the police searched Plaintiff's house, they located and seized all of Plaintiff's guns. *Id.* at ¶ 79-85. Therefore, the Complaint does not suggest that any of the dispatched police officers personally observed conduct by Plaintiff which would constitute reasonable grounds to believe Plaintiff was in immediate need of medical treatment. Thus, Plaintiff has alleged sufficient facts to show that it is plausible the Brackenridge Defendants lacked probable cause to involuntarily commit Plaintiff.

Accordingly, the Court recommends that Defendants' Motion to Dismiss Plaintiff's Fourth Amendment excessive force claim based on involuntary commitment be denied.

4. <u>Punitive Damages Claim</u>

In their brief, Defendants claim that Plaintiff has made only "boilerplate allegations to support an award for punitive damages" so these claims must be dismissed. Defs.' Br. 7. In response, Plaintiff argues that the facts pled are sufficient to conclude that Brackenridge Defendants' conduct was reckless, wanton, and outrageous to support an award of punitive damages. Pl.'s Resp. 4. Plaintiff contends that Brackenridge Defendants' conduct unnecessarily gambled with his life in reckless disregard for his civil rights. *Id.*

In *Smith v. Wade*, the Supreme Court held that "a jury may be permitted to assess punitive damages…when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." 461 U.S. 30, 56 (1983). The question of whether a defendant's conduct rises to the level of recklessness or callous indifference is a question for the finder of fact. *Id. See also Malone v.*

16

*Econ. Borough Mun. Auth.,* 669 F. Supp. 2d 582, 612 (W.D. Pa. 2009). The standard for judging reckless indifference is not "the egregiousness of the [defendant's] conduct, but rather [ ] the [defendant's] knowledge that it may be acting in violation of federal law." *Alexander v. Riga,* 208 F.3d 419, 430 (3d Cir. 2000) (quoting *Kolstad v. Amer. Dental Ass'n*, 572 U.S. 526, 535 (1999)). In *Adickes v. S.H. Kress & Co.*, Justice Brennan stated: "It is sufficient for the plaintiff to show either that the defendant acted… with actual knowledge that he was violating a right 'secured by the Constitution and laws,' or that the defendant acted with reckless disregard of whether he was thus violating such a right." 398 U.S. 144, 233. (1970) (internal citations omitted). *See also Savarese v. Agriss,* 883 F.2d 1194, 1204 (3d Cir. 1989). ("[F]or a plaintiff in a section 1983 case to qualify for a punitive award, the defendant's conduct must be, at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard.").

Based on the standards set forth above, Plaintiff has averred enough facts to plausibly demonstrate that the Brackenridge Defendants acted with reckless disregard or callous indifference by tasing him while he was not posing a threat and involuntarily committing him with no probable cause to do so. Therefore, the claim for punitive damages is an issue to be reserved for the finder of fact.

Consequently, the Court recommends that Defendants' Motion to Dismiss Plaintiff's claim for punitive damages against the Brackenridge Defendants in their personal capacities be denied.

     5. <u>Rule 12(e) Motion for a More Definite Statement</u>

The Brackenridge Defendants claim Plaintiff's Complaint "is fraught with vague generalities and ambiguities such that… Defendant cannot reasonably construe Plaintiff's claims and formulate a response." Defs.' Br. 7-8. These Defendants maintain that Plaintiff has not pled sufficient information in his Complaint to establish that either Sgt. Antal or any Brackenridge Officers were involved in the alleged claims. *Id.* at 8. The Court finds no merit to this argument.

Federal Rule of Civil Procedure 12(e) allows a party to move for a more definite statement of a pleading "which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "The class of pleadings that are appropriate subjects for a motion under Rule 12(e) is quite small—the pleading must be sufficiently intelligible for the court to be able to make out one or more potentially viable legal theories on which the claimant might proceed." *Sun Co. v. Badger Design & Constructors,* 939 F. Supp. 365, 368 (E.D. Pa. 1996) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1376, p. 311 (3d ed. 2004) (stating that "the pleading must be sufficiently intelligible for the district court to be able to make out one or more potentially viable legal theories on which the claimant might proceed")). "Granting the motion is appropriate only when the pleading is 'so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself." *Dixon v. Boscov's, Inc.,* No. Civ. A. 02-1222, 2002 WL 1740583, at *4 (E.D. Pa. July 17, 2002) (citing *Sun Co.*, 939 F. Supp. at 368); *see also* 5 C. Wright & A. Miller, *supra*, § 1376, p. 312 n.9.

Defendants have failed to show that the Complaint falls within this narrow class of pleadings—it is neither unintelligible nor so vague or ambiguous that Defendants cannot respond, even with a simple denial. Therefore, the Court recommends that Moving Defendants' Motion for a More Definite Statement be denied.

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss the Complaint filed by Defendants Sgt. Antal and Unknown Police Officers from the Brackenridge Borough Police Department ([ECF No. 15](#)) be denied in full. It is further recommended that Defendants' Motion for a More Definite Statement, in the alternative, also be denied.

In accordance with the Magistrate Judges Act, [28 U.S.C. § 636(b)](#) (1)(B) and (C), and Rule 72.D.2 of the Local Rules for Magistrate Judges, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file objections thereto. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. Failure to file timely objections shall constitute a waiver of any appellate rights.

DATED: April 27, 2016　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　　　　　_/s/ Lisa Pupo Lenihan_
　　　　　　　　　　　　　　　　　　　　　　　LISA PUPO LENIHAN
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

cc:　　All Counsel of record
　　　　*Via CM/ECF Electronic Mail*